UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAUREN MINHOLZ,

                Plaintiff,

      -against-                           Civil Case No: 1:16-CV-154

LOCKHEED MARTIN CORPORATION;
RAYTHEON COMPANY;[1] ALASKA STRUCTURES
INC., WEATHERPORT SHELTER SYSTEMS LLC,
and DUTTON-LAINSON COMPANY,

                Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge


## DECISION & ORDER

## I.    INTRODUCTION

Plaintiff Lauren Minholz commenced this action to recover for personal injuries she received on February 11, 2014 in Antarctica while deployed with the New York State Air National Guard 109th Airlift Wing. Compl. ¶¶ 5-9. Defendants WeatherPort Shelter Systems LLC ("WeatherPort"), Lockheed Martin Corporation ("Lockheed Martin"), and Alaska Structures, Inc. ("Alaska Structures") move to dismiss the action against them pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that the Court lacks personal jurisdiction over each defendant. *See* dkt. # 36 (WeatherPort's motion); dkt. # 44 (Lockheed Martin's

---

[1]Raytheon Company was terminated from this action by Stipulation and Order entered on October 3, 2016. Dkt. # 87.

motion); dkt. # 52 (Alaska Structures' motion).  WeatherPort and Alaska Structures also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(3), asserting that venue in this court is improper.  Plaintiff opposes the motions, and each defendant has filed a reply.  For the reasons that follow, the Fed. R. Civ. P. 12(b)(2) motions are granted and the Fed. R. Civ. P. 12(b)(3) motions are denied as moot.

## II.    BACKGROUND

On February 11, 2014, Plaintiff Lauren Minholz was deployed with the 109th Airlift Wing of the New York State Air National Guard to McMurdo Station, Antarctica.  Compl., dkt. # 1, ¶¶ 6-8, 236, 457-58.  On this date, she was performing her job duties as an aircraft mechanic, which included entering one of the Engine Tents.  While inside the Engine Tent, Plaintiff began opening the Engine Tent door to access aircraft engines by using the provided winch system.  *Id.* ¶¶ 85, 460.  The winch handle began to uncontrollably spin and violently struck Plaintiff's right hand and wrist, causing her to sustain personal injuries.  *Id.* ¶¶ 5, 6, 8, 86, 461.  Plaintiff's damages include, "but [are] not limited to, severe fractures of her right hand, the need for multiple surgeries, disfigurement, and the sequelae thereof."  *Id.* ¶ 95.

After Plaintiff was injured, she was evacuated and returned to New York, her State of residence.  *See* Minholz Aff. (attached as Exhibit "A" to Iseman Aff.).  Once she returned to New York, her medical care was provided by medical professionals located in the Northern District of New York.  *Id.*  Due to her physical injury, the New York State Air National Guard deemed Plaintiff physically unfit to work in her trained position and she was unable to complete physical fitness tests and other practical requirements to advance within the Air

National Guard. *Id.* As a consequence, Plaintiff's promotion to Senior Airman was delayed. *Id.*

Plaintiff alleges that "[a]t all times herein relevant, both the winch system and the shelter were negligently manufactured, engineered, procured, sold, assembled, installed, repaired and maintained by the Defendants as described herein." Compl. ¶ 9. Alaska Structures is sued under theories of negligence (First and Third Causes of Action), strict products liability (Second Cause of Action), and breach of warranty (Fourth Cause of Action). Lockheed Martin is sued under a theory of negligence (Fifth Cause of Action). WeatherPort is sued under theories of strict products liability (Tenth Cause of Action), negligence (Eleventh Cause of Action), and breach of warranty (Twelfth Cause of Action).

## III.   STANDARD OF REVIEW

### A.   Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes motions to dismiss on the basis of lack of personal jurisdiction over a defendant. "On a Rule 12(b)(2) motion . . . the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-567 (2d Cir. 1996). "In reviewing a Rule 12(b)(2) motion, 'a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists.'" *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11–cv–420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012)).

"Where . . . the issue of personal jurisdiction 'is decided . . . without discovery, the

plaintiff need show only a prima facie case' of jurisdiction on a motion under Rule 12(b)(2)."
*Bonkowski v. HP Hood LLC*,  2016 WL 4536868, at *1 (E.D.N.Y. Aug. 30, 2016) (quoting
*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.
1984)); *see Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013)
(Courts require that "[a]t this stage of the proceedings" a plaintiff make a "prima facie
showing that jurisdiction exists.").  Plaintiff's prima facie showing "must include an averment
of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction
over the defendant." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d
Cir. 2013) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.
2010) (internal quotation marks omitted)); *see Troma*, 729 F .3d at 217 (To survive a motion
to dismiss for lack of personal jurisdiction, the allegations in the complaint when taken as
true must be "legally sufficient allegations of jurisdiction." ).

    In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be
construed in the light most favorable to Plaintiff, and all doubts are to be resolved in
Plaintiff's favor. *Bonkowski*, 2016 WL 4536868, at *1.   Plaintiffs allegations must provide
"factual specificity necessary to confer jurisdiction." *Jazini by Jazini v. Nissan Motor Co.*,
148 F .3d 181, 185 (2d Cir. 1998).  "[C]onclusory statements" without any supporting facts
are insufficient.  *Id.*   The Court is "not bound to accept as true a legal conclusion couched
as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Moreover,
"where a defendant 'rebuts [a plaintiff's] unsupported allegations with direct highly specific,
testimonial evidence regarding a fact essential to jurisdiction–and plaintiff[ ] do[es] not
counter that evidence – the allegation may be deemed refuted.'" *Leroi, Inc. v. Csc3c, Inc.*,

2016 WL 4997228, at *4 (N.D.N.Y. Sept. 19, 2016) (quoting *MEE Direct LLC v. Tran Source Logistics, Inc.*, 2012 WL 6700067, at *2 (S.D.N.Y. Dec. 26, 2012) (citation, internal quotation marks, and footnote omitted)).

"It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp.2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)). Thus, jurisdictional discovery is appropriate when the party has made a "colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Id.* (internal citation omitted); *see Ikeda v. J. Sisters 57, Inc.*, 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015)(same). However, "[w]here [a plaintiff does] do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 18-19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998)).

To make this prima facie showing, a plaintiff must demonstrate a statutory basis for personal jurisdiction over the defendant, and that the Court's exercise of jurisdiction over the defendant is in accordance with constitutional due process principles. *Stroud v. Tyson Foods, Inc.*, 91 F. Supp.3d 381, 385 (E.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)). Plaintiff asserts that personal jurisdiction over Defendants is obtained pursuant to New York's general jurisdiction statute,

New York Civil Practice Law and Rules § 301 ("CPLR § 301"), and New York's specific

jurisdiction statute, New York Civil Practice Law and Rules § 302(a)(3)("CPLR § 302(a)(3)").

## 1. General Jurisdiction - CPLR § 301

CPLR § 301 confers general personal jurisdiction "over persons, property, or status

as might have been exercised heretofore."  N.Y. CPLR § 301.  "[A] foreign corporation is

subject to general personal jurisdiction in New York [under CPLR § 301] if it is 'doing

business' in the state."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.

2000)(citing CPLR § 301); *see Robert Diaz Assocs. Enters. v. Elete, Inc.*,

2004 U.S. Dist. LEXIS 8620, *16 (S.D.N.Y. May 13, 2004)(In determining whether a foreign

corporation is subject to general personal jurisdiction pursuant to CPLR § 301, courts

engage in an analysis to determine whether the corporation "was regularly doing business"

in New York. ).  A court that has "general jurisdiction over a corporation may adjudicate all

claims against that corporation-even those entirely unrelated to the defendant's contacts

with the state." *Sonera Holding B. V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir.

2014).

## 2. Specific Jurisdiction - CPLR § 302(a)(3)

CPLR § 302(a)(3) states that a New York court may exercise jurisdiction over a

non-domiciliary corporation that:

> 3. commits a tortious act without the state causing injury to person or property
> within the state, except as to a cause of action for defamation of character
> arising from the act, if [it] (i) regularly does or solicits business, or engages in
> any other persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or (ii) expects or
> should reasonably expect the act to have consequences in the state and
> derives substantial revenue from interstate or international commerce ....

CPLR § 302(a)(3).

To obtain jurisdiction under either CPLR § 302(a)(3)(i) or § 302(a)(3)(ii), a plaintiff must first show: (1) the defendant committed a tortious act outside the State; (2) the cause of action arises from that act; and (3) the act caused injury to a person or property within the State. *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 713 N.Y.S.2d 304, 735 N.E.2d 883, 886 (N.Y. 2000).

### 3. Due Process

A federal court will "follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, —— U.S. ——, 134 S. Ct. 746, 753 (2014), "unless a state's assertion of jurisdiction contravenes a constitutional guarantee" such as due process. *Cont'l Indus. Group v. Equate Petrochemical Co.*, 586 Fed. Appx. 768, 769 (2d Cir. 2014)(citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (internal quotations omitted)). "The canonical opinion in [the area of due process] remains *International Shoe Co. v. Washington*, 326 U.S. 310, [66 S. Ct. 154, 90 L. Ed. 95 (1945)], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ——, ——, 131 S. Ct. 2846, 2853, 180 L. Ed.2d 796 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316)).

> *International Shoe* 's conception of "fair play and substantial justice" presaged the development of two categories of personal jurisdiction. The first category is represented by *International Shoe* itself, a case in which the in-state activities of the corporate defendant "ha[d] not only been continuous and systematic,

7

but also g[a]ve rise to the liabilities sued on." 326 U.S., at 317, 66 S. Ct. 154. *International Shoe* recognized, as well, that "the commission of some single or occasional acts of the corporate agent in a state" may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity. *Id.*, at 318, 66 S. Ct. 154.   Adjudicatory authority of this order, in which the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, 104 S. Ct. 1868, 80 L .Ed.2d 404 (1984), is today called "specific jurisdiction." *See Goodyear*, 564 U.S., at ——, 131 S. Ct., at 2853 (citing von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1144–1163 (1966) (hereinafter von Mehren & Trautman)).

*International Shoe* distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S., at 318, 66 S. Ct. 154.   As we have since explained, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S., at ——, 131 S. Ct., at 2851; *see id.*, at ——, 131 S. Ct., at 2853–2854; *Helicopteros*, 466 U.S., at 414, n. 9, 104 S. Ct. 1868.

*Daimler*, 134 S. Ct. at 754–55.

Under *Goodyear*, "'[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674  (quoting *Goodyear*, 131 S. Ct. at 2853–54)).  More recently in *Daimler*,

the Supreme Court for the first time addressed the question whether, consistent with due process, "a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary." [*Daimler*,] 134 S. Ct. at 759.  Assuming without deciding that such contacts may in some circumstances be imputed to the foreign parent, the Court held that a corporation may nonetheless be subject to general jurisdiction in a state

only where its contacts are so "continuous and systematic," judged against the corporation's national and global activities, that it is "essentially at home" in that state. *Id.* at 761–62. Aside from "an exceptional case," the Court explained, a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business. *Id.* at 761 & n. 19. In so holding, the Court expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum. *See id.* at 735 n. 18 (citing *Barrow S.S. Co. v. Kane*, 170 U.S. 100 (1898)[;] *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259 (1917)) ....

*Gucci America, Inc. v. Weixling Li*, 768 F.3d 122, 134–35 (2d Cir. 2014).

As the Second Circuit explained in *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), "*Goodyear* seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations." *Id.* at 629. However, "*Daimler* all but eliminated that possibility, 'considerably alter[ing] the analytic landscape for general jurisdiction' by more narrowly holding that, aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 14–15 (E.D.N.Y. 2016)(quoting *Brown*, 814 F.3d at 629 and citing *Daimler*, 134 S. Ct. at 760). "[T]he *Daimler* Court instructed that in assessing the extent of a corporation's contacts in a state for general jurisdiction purposes, [a court] must assess the company's local activity not in isolation, but in the context of the company's overall activity: the general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state contacts,' but 'calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.'" *Brown*, 814 F.3d at 629 (quoting *Daimler*, 134 S. Ct. at 762 n. 20 (alterations and internal quotation marks omitted)).

Emphasizing that "[i]t is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State," *Daimler,* 134 S. Ct. at 761 n. 19 (citation omitted), the Court cautioned that a corporation "that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n. 20. And so, when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how "systematic and continuous," are extraordinarily unlikely to add up to an "exceptional case."

*Brown*, 814 F.3d at 629.

"[T]he *Daimler* Court cited only its decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485 (1952), as an example of an 'exceptional case.'" *Brown*, 814 F.3d at 629 (citing *Daimler*, 134 S.Ct. at 761 n. 19). In *Perkins*, the defendant company's principal place of business was, because of wartime circumstances, temporarily located in the state where it was sued, *see Perkins*, 342 U.S. at 447–50, which the *Daimler* Court deemed "a surrogate for the place of incorporation or head office." *Daimler*, 134 S. Ct. at 756 n. 8 (citation and interior quotation marks omitted). The Court noted that its decision in *Perkins* "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Daimler*, 134 S. Ct. at 755–56 (quoting *Goodyear,* 131 S. Ct. at 2856 (internal quotation marks and brackets omitted)).

From *Daimler*, the proposition emerged that it "would be inconsistent with due process" to exercise general jurisdiction where a plaintiff "has not alleged that [the defendant] is headquartered or incorporated in New York, nor has it alleged facts sufficient to show that [the defendant] is otherwise 'at home' in New York." *Cont'l Indus. Group v. Equate Petrochemical Co.*, 586 Fed. Appx. 768, 769-770 (2d Cir. 2014). Thus, "[t]he

Supreme Court's decision in *Daimler . . .* changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016)(citing *Brown v. Lockheed Martin*, 814 F.3d at 627 (reading *Daimler* as implementing a "restrictive" test); *Gucci Am., Inc.*, 768 F.3d at 135-36 (articulating change in the law effected by *Daimler*); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 274 (E.D.N.Y. 2016) (noting that *Daimler* "narrowed the law on general jurisdiction"); *7 W 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015) ("*Daimler* effected a change in the law ....")); *see also In re Roman Catholic Diocese of Albany, N.Y.*, Inc., 745 F.3d 30, 39–41 (2d Cir. 2014) (recognizing restrictions voiced by Supreme Court in *Daimler* ); *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *8 (S.D.N.Y. Mar. 3, 2016) ("[i]n the recent cases of *Daimler* and *Goodyear*, the Supreme Court made clear that the constitutional standard for finding a corporation to be 'essentially at home' in a foreign jurisdiction is a stringent one")(quoting *Daimler*, 134 S. Ct. at 760).  "[A]lthough *Daimler* and *Goodyear*  'd[o] not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business,' those cases make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is ... insufficient to render it at home in a forum." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) (quoting *Daimler*, 134 S. Ct. at 760)).

For specific jurisdiction,  "[a] corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits

11

unrelated to that activity." *Goodyear*, 564 U.S. at 927-928 (citing *Int'l Shoe Co.,* 326 U.S. at 318). "The plaintiff must demonstrate that [her] 'claim arises out of or relates to [defendant's] contacts with [the forum state]' and that the defendant 'purposefully availed' [itself] of 'the privilege of doing business in' the forum state such that [it] 'could foresee being 'haled into court' there.'" *SPV OSUS Ltd.*, 114 F. Supp. 3d at 169 (quoting *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 243 (2d Cir.1999)); *see Walden v. Fiore*, ⸺ U.S. ⸺, 134 S. Ct. 1115, 1122, 188 L. Ed.2d 12 (2014)(The existence of specific jurisdiction depends on the relationship "among the defendant, the forum, and the litigation.") (internal quotation marks and citation omitted); *Daimler*, 134 S. Ct. at 761 ("[J]urisdiction can be asserted where a corporation's in-state activities are not only continuous and systematic but also give rise to the liabilities sued on.") (citing *Int'l Shoe*, 326 U.S. at 317 (1945)); *Helicopteros*, 466 U.S. at 414 n.8 (Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."). Thus, specific jurisdiction cases are limited to those involving "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Shovah v. Roman Catholic Diocese of Albany*, 745 F.3d 30, 37 (2d Cir. 2014).

### B. Rule 12(b)(3)

The Court employs the same standard of review on a Rule 12(b)(3) dismissal motion alleging improper venue as it does on a Rule 12(b)(2) motion. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). On a Rule 12(b)(3) motion, a plaintiff bears the burden of making a prima facie showing that venue is proper, *id.,* and, in analyzing whether the plaintiff has made the requisite prima facie showing, the Court views all the facts in a light

most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). "[F]or venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Glasbrenner*, 417 F.3d at 357 (emphases in original); *see* also *id.*, at 356–57.

## IV.    DISCUSSION

### A.    Lockheed Martin's Rule 12(b)(2) Motion

Lockheed Martin is a foreign business corporation organized and existing under the laws of the State of Maryland with its principal place of business in Bethesda, Maryland. Compl. ¶¶ 10-11.  Plaintiff alleges that it "owned and/or controlled numerous subsidiary corporations and business entities doing business in New York State," and "was authorized to conduct and transact business within the State of New York through" these subsidiary corporations and business entities. *Id.* ¶¶ 12-13.  Plaintiff further alleges that Lockheed Martin voluntarily injected its products and services into the stream of interstate commerce with a reasonable expectation that the products and services could and would be consumed or used in the State of New York. *Id.* ¶¶ 17-18.   Plaintiff asserts that Lockheed Martin engaged in a persistent course of conduct in the State of New York, that it derives substantial revenues from the goods used or consumed services rendered in the State of New York, and that it "expected or should have expected the tortious acts described [in the complaint] to have consequences in the State of New York." *Id.* ¶¶ 19-21.  There is no dispute that "[t]wenty-one years ago, Defendant Lockheed Martin registered to do business in New York State and it has actively maintained that registration." Pl. Mem. L., p. 7 (citing Iseman Aff. ¶ 10).

Lockheed Martin argues that Plaintiff fails to make out a prima facie showing of personal jurisdiction because:

> Plaintiff admits that Lockheed Martin was incorporated and maintains its principal place of business outside of New York state. Plaintiff also fails to allege that conduct Lockheed Martin engaged in within New York "gave rise" to the alleged injuries at issue. Moreover, this Court lacks personal jurisdiction over Lockheed Martin because (i) Lockheed Martin is not "at home" in this state; (ii) no "exceptional facts" have been alleged to warrant general personal jurisdiction over Lockheed Martin, and (iii) Lockheed Martin has not consented to general personal jurisdiction in New York. Therefore, Plaintiff and co-defendants cannot invoke this Court's exercise of specific or general personal jurisdiction over Lockheed Martin.

Lockheed Martin Mem. L., p. 1.

Plaintiff responds with a number of reasons why Lockheed Martin's arguments should be rejected. The Court will address these *seriatim*.

### 1. General Jurisdiction

#### a. Due Process

Lockheed Martin argues that the exercise of general personal jurisdiction over it would contravene due process. Plaintiff counters that the exercise of general personal jurisdiction over Lockheed Martin would not offend principles of due process because the corporation is essentially at home in New York. In this regard, Plaintiff argues that Lockheed Martin is a global, multi-billion dollar company that primarily provides goods and services to the U.S. military and other militaries around the world, and has registered twenty-eight (28) separate business entities with New York's Department of State - thirteen (13) of which are actively engaged in business in New York. Pl. Mem. L., p. 3. (citing Iseman Aff. at ¶¶ 10-12 and Exhibit "B" annexed thereto). Moreover, Plaintiff points out

that Lockheed Martin has what it describes as "major business areas" in Mitchell Field, Syracuse, and Owego, New York (Iseman Aff. at ¶ 16). Plaintiff also points out that "[s]ince at least 2013, Defendant Lockheed Martin has also annually described its business in Syracuse and Owego as having 'significant operations'" (Iseman Aff. at ¶ 15), and Lockheed Martin employs nearly 5,000 people throughout New York State - 2,201 employees in Owego; 2,400 employees in Syracuse; and 158 employees in Mitchell Field. (Iseman Aff. at ¶ 17). Still further, Plaintiff points out that Lockheed Martin has undertaken a handful of "environmental reclamation projects" in New York, and is publicly traded on the New York Stock Exchange. These facts, Plaintiff contends, establish a basis for general jurisdiction over Lockheed Martin on a theory that it is "at home" in New York.

Lockheed Martin replies by providing evidence indicating that Lockheed Martin had 518 locations in 2013, 540 in 2014, and 591 in 2015. Lockheed Martin Reply Mem. L., p. 5 (citing Reply Declaration of Michael L. Chartan, Exs. 5, 6, & 7). Lockheed Martin also presents evidence indicating that it had approximately 115,000 employees in 2013, 112,000 in 2014, and 126,000 in 2015. *Id.* Lockheed Martin argues that "[w]hen comparing the number of locations Lockheed Martin has in New York (3) to its locations worldwide, New York represents approximately .50% of the locations. Moreover, . . . [the Lockheed Martin] [e]mployees in New York constituted about 3.77% of all employees." *Id.*

Based on the parties' representations, Lockheed Martin's presence in New York as compared to its presence in the United States and world-wide do not support a conclusion that Lockheed Martin is "essentially at home" in New York as that term is defined by *Daimler* and its progeny. Lockheed Martin's New York business operations, and the number of

employees it employs in New York, make up a small percentage of its worldwide and United States business operations.  The fact that Lockheed Martin undertook certain environmental reclamation projects in New York does not alter the determination that its operations in New York constitute a fraction of its worldwide and United States business operations. Moreover, the fact that its stock is traded on the New York Stock Exchange does not change the calculus of its overall business operations because the determination of what stocks are traded in New York is based on the acts of third parties over whom Lockheed Martin would have no control.

Thus, the facts neither establish that Lockheed Martin is "essentially at home" in New York, nor provide a basis to conclude that New York is Lockheed Martin's surrogate for its place of incorporation or head office.  These facts fail to make a prima facie showing that the exercise general personal jurisdiction over Lockheed Martin would be in accordance with constitutional due process principles.

### b.  Reasonableness of Exercise of General Jurisdiction

Because the Court finds that Plaintiff has failed to established a threshold basis for exercising general jurisdiction over Lockheed Martin, the Court need not determine whether the exercise of such jurisdiction would be reasonable under the circumstances.  The Court will, however, address one issue raised by Plaintiff.   That is the fact that Antarctica does not have a judicial system which would allow Plaintiff to bring her action where she was injured.  *See Smith v. United States*, 507 U.S. 197, 201-202 (1993) (Antarctica has no recognized government or law).  The Court finds that this not an exceptional circumstance such to alter the analysis under *Daimler*.   Although she cannot bring suit in Antarctica,

16

Plaintiff can sue in a location that could exercise general personal jurisdiction over Lockheed Martin - presumably the State of Maryland. While this might present a burden on Plaintiff in comparison to litigating the action in New York (her State of residence), the burden is no greater than if the injury had occurred in a forum that could exercise personal jurisdiction over Lockheed Martin, thus requiring her to litigate in that forum. Further, a plaintiff's convenience is not a factor driving the due process analysis under *Daimler*.

### c. Consent to New York's General Jurisdiction

Plaintiff also argues, however, that Lockheed Martin consented to personal jurisdiction for all purposes when it registered to do business in New York, and that given this consent, the exercise of general jurisdiction does not offend traditional notions of due process. Lockheed Martin opposes the argument, asserting, *inter alia*, that the Second Circuit's decision in *Brown v. Lockheed Martin* is dispositive on the issue and defeats Plaintiff's argument.

In *Brown,* the Second Circuit considered whether a Connecticut registration statute allows for general jurisdiction over a foreign corporation and found that it did not. The Connecticut registration statute "generally requires that 'foreign corporation[s]' desiring to 'transact business' in the state obtain a certificate of authority from the Secretary of State to do so." *Brown*, 814 F.3d at 633 (quoting Conn. Gen. Stat. § 33–920). Based on related statutory provisions, the Circuit concluded "that Connecticut law requires that a foreign corporation authorized to transact business 'continuously maintain ... [a] registered office ... and [ ] a registered agent' in the state, and provides that the company may elect to have the Secretary of State of Connecticut serve as that agent." *Id.* (quoting Conn. Gen. Stat. §

33–926).  When examined in the context of the provisions of Conn. Gen. Stat. § 33–926, the Circuit determined that "[t]he statute . . . appears designed to confer what can fairly be characterized as specific jurisdiction in primarily two provisions: § 33–929(e) (unregistered corporation "subject to suit" in the state with respect to causes of action "arising out of" its business in the state) and § 33–929(f) (corporations "subject to suit in the state" on listed causes of action related to in-state matters)."  *Id.* at 634.   The Circuit noted, however, that "Section 33–929 nowhere expressly provides that foreign corporations that register to transact business in the state shall be subject to the 'general jurisdiction' of the Connecticut courts or directs that Connecticut courts may exercise their power over registered corporations on any cause asserted by any person." *Id.*

The Circuit also noted that "although the Connecticut registration statute does not expressly limit the matters as to which an authorized agent may accept service of process, neither does it contain express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts." *Id.*  Further, the Circuit found that the Connecticut statute "gives no notice to a corporation registering to do business in the state that the registration might have the sweeping effect" of consent to general jurisdiction.  *Id.* at 637.

In declining to exercise of general personal jurisdiction based on Lockheed Martin's registration to do business in the state, the Circuit wrote:

> [W]hen Lockheed registered to transact business in Connecticut in 1995, the statute was neither explicit about the scope of jurisdiction conferred, nor had there issued an authoritative state judicial decision construing the statute: We have been directed to no basis on which the corporation should have understood that, by registering and appointing an agent, it could be haled into

18

Connecticut court on non-Connecticut based actions. On the contrary, the history of such statutes suggests that assent only to specific jurisdiction is what the statute required.

In any event, we can say that the analysis that now governs general jurisdiction over foreign corporations—the Supreme Court's analysis having moved from the "minimum contacts" review described in *International Shoe* to the more demanding "essentially at home" test enunciated in *Goodyear* and *Daimler*—suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate "consent"—perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited.

*Id.*

As Lockheed Martin argues here, New York Business Corporations Law § 1301, like Conn. Gen. Stat. § 33–920, is silent on the matter of consent to general jurisdiction.[2] While Plaintiff correctly points out that many New York courts have held that registration under N.Y. Business Corporation Law § 1304 subjects foreign companies to personal jurisdiction

---

[2]The New York registration statute provides:

§ 1301. Authorization of foreign corporations

(a) A foreign corporation shall not do business in this state until it has been authorized to do so as provided in this article. A foreign corporation may be authorized to do in this state any business which may be done lawfully in this state by a domestic corporation, to the extent that it is authorized to do such business in the jurisdiction of its incorporation, but no other business ....

N.Y. Bus. Corp. L. § 1301(a).

The Connecticut registration statute states in pertinent part:

Sec. 33-920. Authority to transact business required.

(a) A foreign corporation ... may not transact business in this state until it obtains a certificate of authority from the Secretary of the State.

Conn. Gen. Stat. § 33-920.

19

in New York, *see STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. 2009)(collecting cases), these cases predate *Daimler*. As expressed by the Second Circuit in *Brown*, the Supreme Court's shift in the general jurisdiction analysis over foreign corporations "from the 'minimum contacts' review described in *International Shoe* to the more demanding 'essentially at home' test enunciated in *Goodyear* and *Daimler* — suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent' . . . to the exercise of general jurisdiction by state courts. . . ." *Brown*, 814 F.3d at 637. Because New York Business Corporations Law § 1301 is absent an explicit indication that registration subjects a registrant to general jurisdiction in New York, an exercise of general personal jurisdiction based on registration alone would be counter to the principles of due process articulated in *Daimler*.[3] *See Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015).[4]

---

[3]Lockheed Martin has provided evidence indicating that in light of *Daimler*, New York State is now deciding if it should amend Business Corporations Law § 1301 to explicitly require any company seeking authorization to do business in New York to consent to general jurisdiction. *See* Chartan Decl. ¶¶ 7-11, Exs. 3, 4. Apparently, there are two bills in the New York State Legislature to amend New York's licensing and registration statutes to clearly inform a foreign corporation that if it applies for authority to do business in New York, it is then consenting to general jurisdiction in New York for all purposes. These bills seek to amend Section 1301 of New York's Business Corporation Law as follows:

> (e) A foreign corporation's application for authority to do business in this state, whenever filed, constitutes consent to the jurisdiction of the courts of this state for all actions against such corporation. A surrender of such application shall constitute a withdrawal of consent to jurisdiction.

*Id.*

[4]The Southern District wrote in *Chatwal* :

Prior to *Daimler*, some courts concluded that registering to do business in the state of New York automatically confers general jurisdiction on that person or entity. *MWL Brasil Rodas & Eixos LTDA v. K–IV Enters. LLC*, 661 F. Supp.2d 419, 424 (S.D.N.Y.2009). *See e.g., Rockefeller Univ. v. Ligand*
(continued...)

#### d.  Conclusion - General Jurisdiction - Lockheed Martin

For these reasons, the Court finds that the exercise of general personal jurisdiction

over Lockheed Martin is improper.

### 2.  Specific Jurisdiction - Lockheed Martin

Plaintiff also contends that specific jurisdiction can be asserted over Lockheed Martin

pursuant to CPLR § 302(a)(3).  Lockheed Martin argues, *inter alia*, that CPLR § 302 is

inapplicable because the situs of Plaintiff's personal injury is in Antarctica, and thus Plaintiff

is unable to establish that the tort caused injury in New York.

#### a.  Situs-of-Injury Test

CPLR § 302(a)(3) may be use to obtain specific jurisdiction over a defendant that

commits a tortious act without the state causing injury to person or property within the state.

*LaMarca*, 735 N.E.2d 883, 886.  "Under [CPLR § 302(a)(3)], the predicative determination.

. . is whether the Plaintiff's injury occurred, or was felt, within the State of New York."

---

[4](...continued)
*Pharm.*, 581 F.Supp. 2d 461, 466 (S.D.N.Y.2008) ("[D]efendant was on constructive notice that New York deems an authorization to do business as consent to jurisdiction."); *Chong v. Healthtronics, Inc.*, No. CV–06–1287, 2007 WL 1836831, at *6 (E.D.N.Y. June 20, 2007) (same).  However, other courts were unwilling to find that registering to do business in the state, without more, was enough to confer general jurisdiction over an entity, even though registration is "very strong evidence that the corporation is subject to in personam jurisdiction." *Beja v. Jahangiri*, 453 F.2d 959 (2d Cir.1972); *Wright v. Maersk Line, Ltd.*, No. 99 Civ. 11282, 2000 WL 744370, at *1 (S.D.N.Y. June 9, 2000) ("Such authorization does not, in and of itself, constitute 'doing business' in the State so as to subject a foreign corporation to personal jurisdiction.").

After *Daimler*, with the Second Circuit cautioning against adopting "an overly expansive view of general jurisdiction," *Gucci*, 768 F.3d at 135, the mere fact of [a defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of  incorporation or its principal place of business. *See* [*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990)].

*Chatwal*, 90 F. Supp. 3d at 105.

*Verragio, Ltd. v. Malakan Diamond Co.*, 2016 WL 6561384, at \*3 (S.D.N.Y. Oct. 20, 2016) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Troma Entm't*, 729 F.3d at 219). "The mere fact that the injured party resides or is domiciled in New York is not a sufficient predicate for jurisdiction under CPLR § 302(a)(3)." *Id.* (citing *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)).

Rather, "[t]o determine where an injury took place for purposes of the long arm statute, New York courts apply a situs-of-injury test." *Weaver v. Derichebourg ICS Multiservices*, 2010 U.S. Dist. LEXIS 11018, at \*6-7 (S.D.N.Y. Feb. 3, 2010). Under the situs-of-injury test, the injury is deemed to have occurred at the site of the "original event which caused the injury." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). For purposes of this analysis, "[t]he original event occurs where the first effect of the tort that ultimately produced the final economic injury is located." *Weaver*, 2010 U.S. Dist. LEXIS 11018, at \*6-7 (citing *DiStefano*, 286 F.3d at 85). The New York Court of Appeals recently held that, "the situs of the injury…is the location of the original event which caused the injury, and not where a party experiences the consequences of such injury." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 381 (N.Y. 2014).

There is no dispute that Plaintiff's alleged injury occurred in Antarctica. In an effort to find jurisdiction in New York, Plaintiff offers a "nuanced analysis" to determine the "situs of the injury." Pl. Mem. L. pp. 12-15. Plaintiff argues that the traditional "situs of the injury test" is not applicable in this case because (1) Antarctica, the true "situs of the injury", does not provide her with recourse; (2) "economic harm" occurred in New York; and (3) her status in the military "strongly favors" a finding that her injury occurred in New York. (*Id.* at 12- 14).

Lockheed Martin argues that Plaintiff's positions should be rejected because they are contrary to settled law.

### (i) Lack of Recourse in Antarctica

As indicated above, if the claims against Lockheed Martin are dismissed for lack of personal jurisdiction, Plaintiff can sue Lockheed Martin in a forum that has personal jurisdiction over it. Thus, the fact that the accident occurred in a place that does not have a judicial system does not leave Plaintiff without a forum for recovery.

### (ii) Economic Injury In New York

There is no merit to Plaintiff's argument that New York may be considered the situs of the injury because she felt "economic injury" in New York. New York courts have distinguished between personal injury torts and economic torts with respect to the situs of the injury analysis. Courts have explained that "[w]hereas a commercial tort involving fraud or misrepresentation may not cause injury immediately or in the state in which it was committed, the first effect of a tort involving physical injury is immediately visited upon the body of the injured person." *Gould v. Moran Towing Corp.*, 2014 U.S. Dist. LEXIS 47153, at *9-10 (E.D.N.Y. Apr. 3, 2014). Therefore, even accepting that Plaintiff suffering economic damage in New York after the accident, jurisdiction does not exist in New York

### (iii) Plaintiff's Military Status

Plaintiff also argues that a "unique factor" that "strongly favors" a conclusion that Defendant's tortious conduct had "an impact within New York for § 302(a)(3) purposes is that Plaintiff, at the time of her injury, was executing orders issued by the State of New

23

York" and thus "was an official extension of New York State and subject to New York's jurisdiction." Pl. Mem. L. p. 14 (citing NY Mil. Law §§ 130.2, 130.3; 9 NYCRR 515.1). The argument is without merit.

The injury sustained here was personal to Plaintiff; it did not affect the State of New York even though Plaintiff was serving in New York's Air National Guard when she was injured. Further, the statutory and code provisions cited by Plaintiff neither define where a member of New York's military may bring a civil action, nor supplant the requirements of New York's statutory jurisdictional provisions or the principles of constitutional due process. *See* N.Y. Mil. Law § 130.2; § 130.3; 9 NYCRR 515.1. Accordingly, Plaintiff's military status at the time of her injury neither alters the situs-of-injury test, nor grants specific personal jurisdiction in New York over a defendant who may be responsible for a injury sustained by a member of the military in a location other than New York.

### b. Conclusion - Specific Jurisdiction - Lockheed Martin

For the reasons discussed here, Plaintiff has failed to make a prima facie showing that New York may properly exercise long-arm jurisdiction over Lockheed Martin for her injuries sustained in Antarctica.

### 3. Jurisdictional Discovery - Lockheed Martin

Because Plaintiff has not advanced a colorable basis for general or specific personal jurisdiction over Lockheed Martin that could reasonably be established with further development of the factual record, jurisdictional discovery is denied.

### 4.  Conclusion - Lockheed Martin's  Fed. R. Civ. P. 12(b)(2) Motion

For the reasons discussed above, Lockheed Martin's motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(2) is granted

### B.  WeatherPort's Rule 12(b)(2) Motion

The Court next turns to WeatherPort's Rule 12(b)(2) motion.

Plaintiff alleges that "[a]t all times herein relevant, the Defendant, WeatherPort

Shelter Systems LLC was and is a foreign business corporation or other entity duly

organized and existing under the laws of Colorado" that "maintained its principal place of

business in Delta, Colorado." Comp., ¶¶ 45, 47.   Further, Plaintiff alleges that WeatherPort

"is owned and/or controlled by Defendant Alaska Structures, Inc." *Id.* ¶ 48.

Plaintiff also alleges that WeatherPort:

> . . . engaged in a persistent course of conduct in the State of New York; . . .
> voluntarily injected its products into the stream of interstate commerce, with a
> reasonable expectation that the products could and/or would be consumed or
> used in the State of New York; . . . voluntarily injected its services into the
> stream of interstate commerce, with a reasonable expectation that its services
> could and/or would be consumed or used in the State of New York; . . .
> derived substantial revenues from the goods used or consumed or services
> rendered in the State of New York; [and] . . . expected or should have
> expected the tortious acts described herein to have consequences in the State
> of New York.

*Id.* ¶¶ 51-55.

In support of its motions, WeatherPort provides an affidavit from its Office Manager,

Rachel Bissell.  Dkt. # 36-3.  Ms. Bissell avers that WeatherPort is headquartered in Delta,

Colorado; has a training office located in Kirkland, Washington; and maintains no physical

presence in the State of New York in that it owns no property or offices in New York, is not a registered corporation in New York, has no bank accounts in New York, does not actively solicit business or advertise in New York, and has never sought authorization to do business in New York. *Id*. ¶¶ 4-8, 10. Ms. Bissell further avers that WeatherPort employees have never traveled to the State of New York for training, to attend trade shows, or to participate in industry events. *Id.* ¶ 6.

While Ms. Bissell acknowledges that WeatherPort operates a website (http://www.weatherport.com) which is held out to the public at large, "the website merely provides passive information and all orders must be placed with a representative at WeatherPort." *Id.* ¶ 11. Ms. Bissell indicates that since July 2014, WeatherPort has received orders from only ten (10) customers who provided a New York billing address, has shipped only nine (9) orders from WeatherPort to a New York destination address, and all but two (2) of those orders were shipped Free-On-Board at the WeatherPort factory in Colorado meaning that the customers became the owners of the goods at the factory and were responsible for the shipping. *Id.* ¶¶ 12-15 (citing History of NY Orders, Exs. A & B). Ms. Bissell maintains that "[t]he total amount of revenue generated by any billing and/or shipments to customers located within New York State represent less than 1% of WeatherPort's total sales since January 1, 2014." *Id.* ¶ 16.

Ms. Bissell also asserts:

At times, WeatherPort has shipped buildings to Alaska Structures, Inc. at its Las Cruces, NM facility. They provide a service to WeatherPort in which they set up, perform quality control inspections, and then pack the buildings for shipment. Customers then pick up the buildings at Alaska Structures, Inc. facility or it ships from their factory.

*Id.* ¶ 13.

Finally, Ms. Bissell maintains:

WeatherPort did manufacture a fabric building and/or portions of its components which was sold to Alaska Structures. Inc. for use in Antarctica. Upon information and belief, Alaska Structures, Inc., 9024 Vanguard Drive, Suite 101, Anchorage, Alaska 99507 sold the fabric building and/or portions of its components on November 12, 2012 to RSA Engineering. Inc., 2522 Arctic Blvd., Suite 200, Anchorage, Alaska 99503 who in turn sold/shipped them to the National Science Foundation. When the fabric building and/or portions of its components were sold by WeatherPort to Alaska Structures, Inc., that transaction did not involve the State of New York.

*Id.* ¶¶ 19-21.

Plaintiff counters that WeatherPort's website "is readily accessible to any individual or business in New York with internet access and offers interactive features such as a blog, a subscription newsletter service, the ability to email, leave messages and place inquires with Defendant Weatherport." Pl. Mem. L., p. 3. Plaintiff also contends that the website "links to its various social media profiles through which it advertises its products and services. Defendant Weatherport has separate social media profiles on Facebook, Twitter, Google Plus, Instagram, and Pinterest and provides links to those sites through its website. Each of these social media profiles are also accessible by anyone in New York State." *Id.* Further, Plaintiff contends that WeatherPort's social media websites

advertise and do business in New York as evidenced by its Facebook page which recently posted a message thanking a company called All Glamping for featuring Defendant Weatherport's product in All Glamping's "complete guide to glamping." In that feature, All Glamping depicted one of Defendant Weatherport's shelters (called a Yurt) and advertised that its customers could stay in the Yurt at one its locations in rural Waterville, New York.

*Id.* p 4 (citation omitted).

Plaintiff also contends that "[a]ccording to its website, Defendant Weatherport also holds itself out as having a division named Blu-Med Response. Blu-Med has conducted business in New York, having contracted with the Suffolk County government to provide medical shelter systems for use in emergency situations. Additionally, these shelter systems were used in the aftermath of Super Storm Sandy by the Suffolk County Fire and Rescue and Emergency Services." *Id.* (citing Ex. "F" to Iseman Aff.).

WeatherPort replies that "Plaintiff's reliance on a perceived relationship between WeatherPort and Blu-Med is contrary to the evidence. A review of the Blu-Med website materials relied upon by Plaintiff state that Blu-Med is a 'division of Alaska Structures, Inc.'" WeatherPort Reply Mem. L. p. 7 (citing Ex. "F" to Iseman Aff., pp. 2, 5). "Moreover, both WeatherPort and Alaska Structures, Inc. are separate privately held companies with no parent company." *Id.*, p. 8 (citing Dkt. # 35; Dkt. # 51).

### 1. General Jurisdiction - WeatherPort

Plaintiff's allegations against WeatherPort, together with the uncontroverted facts, fail to satisfy the "essentially at home" due process requirement of *Daimler* or establish that New York is a surrogate for WeatherPort's place of incorporation or its head office. These facts indicate that WeatherPort's headquarters is located in Colorado; it is not a New York corporation; it maintains no physical presence in the State of New York; it owns no property and has no offices located within New York; and its employees have never traveled to the State of New York for training, to attend trade shows or to participate in industry events. *See* Bissell, Aff. ¶¶ 5,6 & 8. The fact that WeatherPort maintains a passive Internet website available to New York residents is an insufficient predicate upon which to base a personal

28

jurisdiction determination. *See Stephan v. Babysport, LLC*, 499 F. Supp.2d 279, 287–88 (E.D.N.Y. 2007)("passive website" that simply makes information available to others in a foreign jurisdiction will not justify the exercise of personal jurisdiction)(citing *Best Van Lines v. Walker*, 490 F.3d 239, 251–52 (2d Cir. 2007)); *see also Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (the mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction). Morever, the facts indicate that less than one percent of WeatherPort's sales had a billing or shipping address in New York in January 2014. *Id.* ¶ 16. These facts, when judged against WeatherPort's overall activities, fail to support a conclusion that WeatherPort had continuous and systematic contact with New York such to justify the exercise of general personal jurisdiction. *See Daimler,* 134 S. Ct. at 761-762; *see also Albany Intern. Corp. v. Yamauchi Corp.*, 978 F. Supp. 2d 138, 144 (N.D.N.Y. 2013)("Under New York law, a foreign corporation may be subject to general jurisdiction under the 'solicitation-plus' doctrine if its sales to New York customers rise to the level of 'substantial solicitation.' However, a finding that a foreign corporation derives less than five percent of its revenue from New York sales does not rise to the level of 'substantial solicitation.'")(citations omitted). Thus, Plaintiff fails to present a prima facie case that WeatherPort is essentially at home in New York, or that New York serves as a surrogate for WeatherPort's place of incorporation or home office.[5]

As to Blu-Med, the evidence presented by Plaintiff indicates that Blu-Med is a

---

[5]Although Plaintiff requests further discovery presumably to find out whether WeatherPort has transacted more than 1% of its overall sales in New York, Plaintiff has failed to proffer a colorable argument that Ms. Bissell's representation about WeatherPort's New York sales are so far beyond the pale that it would tip the *Daimler* analysis so dramatically to result in a finding that WeatherPort is "essentially at home" in New York or is WeatherPort's surrogate for its place of incorporation or its home office.

division of Alaska Structures, and there appears to be no dispute that WeatherPort and Alaska Structures are separate privately held companies. Even assuming, *arguendo*, that Blu-Med is a corporate affiliate of WeatherPort, the *Daimler* and *Goodyear* cases teach that corporate affiliation is an insufficient basis to satisfy due process on general jurisdiction grounds. Further, Plaintiff has failed to present facts indicating that Blu-Med is "essentially at home" in New York such to satisfy the due process requirement articulated in *Daimler*.

Thus, Plaintiff fails to establish a prima facie basis for New York to assert general personal jurisdiction over WeatherPort without contravening the principles of due process. WeatherPort's motion in this regard is granted.

## 2. Specific Jurisdiction - Weather Port

Plaintiff also claims that WeatherPort is subject to specific personal jurisdiction under CPLR 302(a)(3) because WeatherPort committed a tortious act outside of New York that caused injury in New York. The argument is without merit.

Like with her opposition to Lockheed Martin's motion, Plaintiff suggests that the Court abandon the "situs-of-injury" test and instead apply an analysis of "where the first effect of the tort was located that ultimately produced the final economic injury." Pl. Mem. L., p. 9 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999)). For the reasons discussed with regard to Lockheed Martin's challenge to the exercise of long-arm jurisdiction, and because *Bank Brussels* addressed commercial torts such as fraud or breach of fiduciary duty, *see Bank Brussels*, 171 F.3d at 792-93, Plaintiff's argument is without merit. Further, as indicated above, specific jurisdiction is limited to those cases involving "issues deriving from, or connected with, the very controversy that

establishes jurisdiction." *Shovah*, 745 F.3d at 37.  The claims against WeatherPort do not

present such a case.  Thus, there are no grounds under CPLR 302(a)(3) to support long-

arm personal jurisdiction over WeatherPort.

### 3.  Jurisdictional Discovery - WeatherPort

Because Plaintiff has not advanced a colorable basis for general or specific personal

jurisdiction over WeatherPort that could reasonably be established with further development

of the factual record, jurisdictional discovery is denied.

### 4.  Conclusion - WeatherPort's Rule 12(b)(3) Motion

For the reasons discussed above, WeatherPort's Rule 12(b)(3) motion to dismiss is

granted.

### C.  WeatherPort's Rule 12(b)(3) Motion

Because the Court has granted WeatherPort's Rule 12(b)(2) motion, there is no

reason to reach WeatherPort's Rule 12(b)(3) motion.  That motion, therefore, is denied as

moot.

### D.  Alaska Structures's Rule 12(b)(2) Motion

As to Alaska Structures, Plaintiff alleges that it is a foreign business corporation or

other entity duly organized and existing under the laws of the State of Alaska that maintains

its principal place of business in Anchorage, Alaska.  Compl. ¶¶ 32-33.  Plaintiff further

alleges that Alaska Structures:

> . . . owned and/or controlled WeatherPort Shelter Systems LLC (a/k/a
> WeatherPort LLC, Hansen Weather-Port Corp. and HWP LLC); . . . contained
> a division known as Blu-Med; . . . Blu-Med engaged in a persistent course of

31

conduct in the State of New York; . . . conducted and transacted business within the State of New York; . . . was responsible for the manufacture, design, engineering, development, procurement, installation, assembly, inspection, repair and/or maintenance of shelter systems known as "Engine Tents" and/or some or all of the component parts thereof, located at or near McMurdo Station, Antarctica, in support of the joint operations of the National Science Foundation and the 109th Airlift Wing of the New York State Air National Guard; . . . voluntarily injected its products into the stream of interstate commerce, with a reasonable expectation that the products could and/or would be consumed or used in the State of New York; . . . voluntarily injected its services into the stream of interstate commerce, with a reasonable expectation that its services could and/or would be consumed or used in the State of New York; . . . caused injury to the Plaintiff, Lauren Minholz, as described herein; . . . engaged in a persistent course of conduct in the State of New York; . . . derived substantial revenues from the goods used or consumed or services rendered in the State of New York; [and] . . . expected or should have expected the tortious acts described herein to have consequences in the State of New York.

*Id.* ¶¶ 32-44.

In support of its motions, Alaska Structures provides an affidavit from its Vice President, Wanda Gudim. Dkt. # 52-3. Ms. Gudim avers that Alaska Structures is a company that manufactures and sells commercial fabric buildings for use as warehouses, storage facilities, shelters, hangars, workshops, remote camps, mobile offices, etc. Gudim Aff., ¶ 3. Alaska Structures was incorporated in the State of Alaska in 1979 and is a registered Alaska business corporation. *Id.* ¶ 4. Its principal place of business is in Anchorage, Alaska. *Id.* ¶ 5. Its registered agent for service of process is DWT Alaska Corp., which has its mailing and physical address at 188 W. Northern Lights Boulevard, Anchorage, Alaska. *Id.* ¶ 6.

Ms. Gudim further avers that Alaska Structures neither owns nor leases any property in New York State. *Id.* ¶ 7. It has no physical presence in New York State; it has no offices

in New York State; it does not employ anyone who works or resides in New York State; it does not have any bank accounts in New York State; it does not have a telephone number in New York State; it is not a registered New York State business entity of any type, nor has it sought to become registered in New York State; and it has not actively solicited business or advertised its products within the State of New York. *Id.* ¶¶ 7-11. According to Ms. Gudim, "Alaska Structures does an exceedingly small percentage of its business in the State of New York. In the past five years, significantly less than 1% of Alaska Structures sales have involved a customer with a ship to address located in New York, .35 %[6] to be exact." *Id.* ¶ 12.

Ms. Gudim indicates that Alaska Structures maintains an Internet website that is held out to the public at large, but indicates that the website is passive in that it only provides information about Alaska Structures' products, and customers cannot order any products from the website. *Id.* ¶¶ 13-14. Ms. Gudim further indicates that there is no pricing information regarding the products on the website. *Id.* ¶ 15.

In response, Plaintiff argues that "Alaska Structures admittedly does business in New York. While Defendant states this is an 'exceedingly small percentage of its business', the Defendant has not disclosed the dollar figures, volume nor nature of the business it conducts in New York." Pl. Mem. L. p. 4. Plaintiff also notes that Ms. Gudim's affidavit does not refute that Alaska Structures owns and/or controls Weatherport and an entity called Blu-Med. From this, Plaintiff contends:

---

[6]Ms. Gudin's affidavit indicates that Alaska Structures' New York sales amount to ".0035%" of its business. However, in her Reply Affidavit, she references "the 0.35% (less than 1 %) of Alaska Structure's business done in New York State within the last five years." Reply Aff. ¶ 13. Because the Court construes the evidence in the light most favorable to Plaintiff, it uses the larger percentage.

> Weatherport by its own admission conducts business in New York State. Similarly, Blu-Med has conducted business in New York, having contracted with the Suffolk County government to provide medical shelter systems for use in emergency situations. Additionally, these shelter systems were used in the aftermath of Super Storm Sandy by the Suffolk County Fire and Rescue and Emergency Services. Defendant Alaska Structures' Motion to Dismiss and its supporting exhibits, including the Affidavit of its Vice President, Wanda Gudim, do not refute or otherwise contradict these allegations.

*Id.* (citations omitted)

Plaintiff also notes that she has "made numerous, specific allegations in her Complaint regarding jurisdictional facts and Defendant's conduct vis-a-vis Plaintiff, the New York Air National Guard and the State of New York. To paraphrase from the Complaint, . . . Defendant was responsible for the Engine Tents (and the component parts thereof) that caused the injury; that Defendant sold, supplied and/or provided the Engine Tent to New York State Air National Guard; that it knew members of the New York State Air National Guard were using said tents; and that its knew or should have known that its conduct would have consequences in New York. Each of these facts goes unrefuted by Defendant." *Id.* at pp. 4-5.

In her Reply Affidavit, Ms. Gudim asserts (and provides evidence supporting) that "Alaska Structures' *only* involvement with the fabric shelter at issue was to purchase it from WeatherPort Shelter Systems LLC and sell it to another entity called RSA Engineering Inc., which has a business address of 2522 Arctic Boulevard, Suite 200, Anchorage Alaska 99503." Gudim Reply Aff. ¶ 3 (emphasis in original)(citing Ex. A, Purchase Agreement between Alaska Structures and RSA Engineering; Ex. B, Invoice from Alaska Structures to RSA Engineering; and Ex. C, Order Memorandum from Alaska Structures to WeatherPort). She further asserts that "[i]n that transaction, Weather Port shipped the fabric shelter from

Delta, Colorado to Alaska Structures in Las Cruces, New Mexico. From there, Alaska

Structures shipped the fabric shelter to another entity called National Science Foundation in

Port Hueneme, California." *Id.* ¶ 4 (citing Exs. B & C). Thus, Ms. Gudim concludes, "the

fabric shelter purchased and sold by Alaska Structures did not transit through New York

State, and neither the seller (WeatherPort), the buyer (RSA Engineering), nor the recipient

(National Science Foundation) was located in New York State. Furthermore, as evidence

by the Purchase Agreement [Ex. A], and Invoice [Ex. B], Alaska Structures did not sell the

fabric shelter to the New York State Air National Guard. Alaska Structures did not have a

direct contractual relationship with or direct contact with the New York State Air National

Guard." *Id.* ¶¶ 5-7. Ms. Gudim further avers that "[a]t the time of the sale, Alaska Structures

did not know, nor did it have reason to know, that the New York State Air National Guard or

its members were the ultimate consumers or users of the fabric shelter." *Id.* ¶ 8. She also

asserts that "Alaska Structures did not design, manufacture, erect, construct, inspect the

construction of, or maintain the fabric shelter at issue." *Id.* ¶ 9.

　　Ms. Gudim also avers that "Blu-Med Response Systems is, in fact, a division of

Alaska Structures. However, it is not a separate business entity, and all of the information

in my initial affidavit regarding Alaska Structures' lack of contacts with New York applies to

Blu-Med as well." *Id.* ¶¶ 10-11; *see id.* ¶¶ 12-13.[7] She also asserts that while Blu-Med

---

[7]In this regard, Ms. Gudin asserts:

In other words, like Alaska Structures, Blu-Med has no offices or physical presence in the
State ofNew York, neither owns nor leases any real property in New York State, does not
employ anyone who works or resides in New York State, does not have any bank accounts in
New York State, does not have a telephone number in New York State, is not a registered
New York State business entity, has not sought to become registered in New York State, and
has not actively solicited business or advertised within New York State.

(continued...)

provided fabric shelter structures in Suffolk County, New York, "[t]hat transaction actually occurred nearly ten years ago in 2007, when Alaska Structures (Blu-Med division) contracted with Suffolk County Emergency Medical Services to provide a few fabric shelters. These same shelters were used in 2012 by the Suffolk County Emergency Medical Services to assist victims of Superstorm Sandy. The transaction in 2007 once again represented far less than 1% of Alaska Structures' (again, including Blu-Med's) total revenue that year - 0.6% to be exact." *Id.* ¶¶ 14-16.

Ms. Gudim also asserts that "Alaska Structures' and Blu-Med's Internet websites and social media presence through, for example, Facebook and Twitter accounts, are passive in that all such websites and social media accounts only provide information, and customers cannot order any products or enter into contracts with Alaska Structures or Blu-Med through them." *Id.* ¶ 18.

Ms. Gudim also avers that "Alaska Structures and co-defendant WeatherPort Shelter Systems LLC are separate business entities." *Id.* ¶ 19. She acknowledges that while "the owner of 100 percent of Alaska Structures' stock, Richard Hotes, also is a 99 percent member of co-defendant WeatherPort Shelter Systems LLC," the two businesses "have separate places of business, production facilities, financial books/ledgers, and tax filings," *id.* ¶¶ 20-21; see *id.* ¶¶ 22- 26, "do not provide each other with capital or low or

---

[7](...continued)
Any business Blu-Med has conducted in New York State within the last five years was included within the miniscule amount of Alaska Structures' business discussed in my initial affidavit. In other words, the 0.35% (less than 1 %) of Alaska Structure's business done in New York State within the last five years already includes any business done by Blu-Med.

Gudin Reply Aff. ¶¶ 12-13.

no-interest loans, or pay each other's operating expenses like payroll," *id.* ¶ 27, "[t]he day-to-day operations of each company are independently managed," *id.* ¶ 28, and "neither Alaska Structures nor WeatherPort determines what contracts or business transactions the other will enter into or the terms or pricing of such contracts." *Id.* ¶ 29.

Ms. Gudim asserts that while Plaintiff "claims there is some 'larger entity' that includes Alaska Structures, WeatherPort, and/or Blu-Med as 'different divisions,' . . . there is no 'larger entity' that owns or controls all three entities or any combination thereof. Furthermore, neither Alaska Structures' nor WeatherPort's business documents, such as contracts, letterheads, or marketing brochures, identify one company as a 'division' of the other." *Id.* ¶¶ 30-32.

Ms. Gudim also addresses Plaintiff's "claims [that] Alaska Structures has done business in New York State 'through' the transactions WeatherPort's Office Manager Rachel Bissell's describes in her affidavit," asserting:

> Plaintiff is incorrect. Alaska Structures was not involved in any of the transactions Ms. Bissell describes. Alaska Structures was not a party to any contract involved in those transactions. Alaska Structures did not direct or determine the terms of those transactions. Alaska Structures did not design, produce, purchase, or sell any of the products involved in those transactions. Alaska Structures did not profit or receive any revenue from those transactions.

*Id.* ¶¶ 33-37.

### 1. General Jurisdiction - Alaska Structures

Although Plaintiff asserts that she has alleged facts "demonstrating that Defendant Alaska Structures has engaged in a systematic and continuous business presence within

and with the State of New York for this Court to exercise general jurisdiction," Pl. Mem. L., p. 6, it is undisputed that Alaska Structures does not maintain an office or own or lease real estate in New York, Gudim Aff. ¶¶ 5-9; does not have a bank account in New York, *id.* ¶ 9; is not registered to do business in New York, nor has it attempted to become registered, *id.* ¶¶ 4, 10; does not actively solicit business or conduct marketing in New York, *id.* ¶ 11; and does not have employees or agents located in New York, *id.* ¶ 8. Moreover, it is undisputed that Alaska Structures' Internet websites and social media outlets are passive and do not allow customers to order any products or enter into contracts with Alaska Structures through them. Finally, Alaska Structures has provided evidence indicating that less than 1% of its overall sales involved New York residents. These facts, when judged against Alaska Structures overall activities, fail to support a conclusion that Alaska Structures is "essentially at home" in New York, or provides a basis to conclude that New York is a surrogate for Alaska Structures' place of incorporation or its head office.[8]

Furthermore, Plaintiffs reliance on the activities of Blu-Med Response System in New York State to subject Alaska Structures to general personal jurisdiction is insufficient. While Blu-Med is a division of Alaska Structures, it is not a separate business entity, and the information regarding Alaska Structures' lack of contacts with New York applies equally to Blu-Med. Gudim Reply Aff., ¶ 11; *see id.* ¶¶ 12;[9] 18.[10]

---

[8]Although Plaintiff requests further discovery to find out whether Alaska Structures has transacted more than 1% of its overall sales in New York, Plaintiff has failed to proffer a colorable argument that Ms. Gudim's representation about Alaska Structures' New York sales are so far beyond the pale that it would tip the *Daimler* analysis so dramatically to result in a finding that Alaska Structures is "essentially at home" in New York or that New York is Alaska Structure's surrogate for its place of incorporation or its home office.

[9]Blu-Med has no offices or physical presence in the State of New York, does not own nor leases any real property in New York State, does not employ anyone who works or resides in New York State, does not
(continued...)

Plaintiff's attempt to reach Alaska Structures based on a claim that Alaska Structures does business in New York "through" WeatherPort is without merit. Her bald and conclusory generalizations that Alaska Structures "owns or controls" WeatherPort is factually unsupported. Moreover, even assuming that Alaska Structures is a "parent" company such that WeatherPort's ties to New York could subject it to personal jurisdiction in New York under an agency or department relationship, *see Koehler v. The Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)(A parent corporation can be subjected to personal jurisdiction only when "the relationship between the foreign parent and the local subsidiary validly suggests the existence of an agency relationship or the parent controls the subsidiary so completely that the subsidiary may be said to be simply a department of the parent."), WeatherPort's ties to New York are, as addressed above, insufficient to serve as the basis of general personal jurisdiction.

Thus, Plaintiff has failed to establish a prima facie case to justify the exercise of general personal jurisdiction over Alaska Structures under CPLR § 301. *See Daimler,* 134 S. Ct. at 761-762; *see also Albany Intern. Corp..*, 978 F. Supp. 2d at 144.

## 2. Specific Jurisdiction - Alaska Structures

Plaintiff claims that Alaska Structures is subject to personal jurisdiction under New York's specific jurisdiction statute, CPLR 302(a)(3), because Alaska Structures committed a

---

[9](...continued)
have any bank accounts in New York State, does not have a telephone number in New York State, is not a registered New York State business entity, has not sought to become registered in New York State, and has not actively solicited business or advertised within New York State. Gudin Reply Aff. ¶ 12.

[10]Blu-Med's Internet website and social media presence, like Alaska Structures', are passive, and customers cannot order any products or enter into contracts with Blu-Med through them. Gudin Reply Aff. ¶ 18.

tortious act outside of New York that caused injury in New York.  Like with her opposition to Lockheed Martin's and WeatherPort's motions, Plaintiff argues that '[t]he traditional situs-of-injury test does not apply to this case as a practical and logical matter because the test relies on the presumption that the situs of the injury has a competent forum capable of handling the underlying claim.  Antarctica has no such forum, court or resolution process.  Simply put, [Plaintiff] cannot bring this action in Antarctica.  This unique but no less fundamental issue should preclude the traditional application of the situs-of-injury test or, at the very least, alter its application."  Pl. Mem. L., p. 9.  For the reasons discussed with regard to Lockheed Martin's and WeatherPort's challenges to the exercise of long-arm jurisdiction, Plaintiff's argument is without merit and, therefore, is rejected.   Furthermore, as discussed with WeatherPort's specific jurisdiction challenge, specific jurisdiction is limited to those cases involving "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Shovah*, 745 F.3d at 37.  The claims against Alaska Structures do not present such a case.

### 3.  Jurisdictional Discovery - Alaska Structures

Because Plaintiff has not advanced a colorable basis for general or specific personal jurisdiction over Alaska Structures that could reasonably be established with further development of the factual record, jurisdictional discovery is denied.

### 4.  Conclusion - Alaska Structures' Rule 12(b)(3) Motion

For the reasons discussed above, Alaska Structures' Rule 12(b)(3) motion to dismiss is granted.

### C. Alaska Structures' Rule 12(b)(3) Motion

Because the Court has granted Alaska Structures' Rule 12(b)(2) motion, there is no reason to reach WeatherPort's Rule 12(b)(3) motion. That motion, therefore, is denied as moot.

## V.     CONCLUSION

For the reasons discussed above,

- WeatherPort Shelter Systems LLC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) [dkt. # 36] is **granted** and the action against WeatherPort Shelter Systems LLC is **dismissed without prejudice** for lack of personal jurisdiction. WeatherPort Shelter Systems LLC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) [dkt. # 36] is **denied as moot**.

- Lockheed Martin Corporation's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) [dkt. # 44] is **granted** and the action against Lockheed Martin Corporation is **dismissed without prejudice** for lack of personal jurisdiction.

- Alaska Structures, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) [dkt. # 52] is **granted** and the action against Alaska Structures, Inc. is **dismissed without prejudice** for lack of personal jurisdiction. Alaska Structures, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) [dkt. # 52] is **denied as moot**.

**IT IS SO ORDERED.**

Dated: December 30, 2016

Thomas J. McAvoy
Senior, U.S. District Judge